MULLALLY v. GREENWOOD *et al.*, *Appellants*.

Division Two, March 5, 1895.

1. **Practice**: EVIDENCE: QUESTION FOR JURY. The fact that defendant testified to certain statements as having been made by the plaintiff, which the latter did not deny, his attention not having been directly called to them in his examination, does not preclude the jury from passing on their truth.

2. **Sale**: "SATISFACTORY TO PURCHASER," MEANING OF TERM. The meaning of the words "satisfactory to the purchaser," considered in connection with different contracts of sale.

3. **Lease**: "SATISFACTORY" LEASE, MEANING OF TERM. Under an agreement to pay commissions for negotiating a "satisfactory lease," the lessor can not arbitrarily refuse to accept the lease negotiated.

*Appeal from St. Louis City Circuit Court.*—HON. L. B. VALLIANT, Judge.

REVERSED AND REMANDED.

*Campbell & Ryan* for appellants.

(1) The court misdirected the jury as to the meaning of the term "satisfactory." *Osborne v. Francis*, 38 W. Va. 312; *Singerly v. Thayer,* 108 Pa. St. 291; *Boiler Works v. Schnaber*, 155 Pa. St. 394; *Zaleski v. Clark*, 44 Conn. 218; *Brown v. Foster*, 113 Mass. 136; *Allen v. Company*, 14 S. Rep. 362; Tiedeman on Sales, sec. 213. (2) The above quoted part of said first instruction is bad, for the further reason that it assumes as a fact that there was an understanding as to the terms of the proposed lease between plaintiff and defendants at the time the written agreement of October 20 was made. *Stone v. Hunt*, 94 Mo. 475; *Comer v. Taylor*, 82 Mo. 341; *Wilkerson v. Thompson,* 82 Mo. 317; *Heck v. Ritchey*, 66 Mo. 114; *Railroad v. Griffin*, 68 Ill. 499; *Durham v. Goodwin*, 54 Ill. 469. (3) The same error is repeated further down in the same instruction. (4) This instruction is bad, because it restricts the jury to a consideration of the terms of the lease, in determining whether it was satisfactory, and ignores the important element in a lease of the character and responsibility of the lessee.

*Chester H. Krum* and *C. M. Napton* for respondent.

(1)   The law governing this cause was properly declared by the circuit court.   It is well settled, by a long series of adjudications, in this state, that a real estate agent or broker performs his duty, and is entitled to his commissions, when he produces a purchaser who is ready, willing, and able to buy on the terms authorized by the principal.   And this is true, although the trade falls through, if the failure is due to the fault of the principal.   *Gelatt v. Ridge*, 117 Mo. 553; *Carpenter v. Rynders*, 52 Mo. 278; *Hayden v. Grillo*, 35 Mo. App. 647; *Bell v. Kaiser*, 50 Mo. 150; *Tyler v. Parr*, 52 Mo. 249; *Timberman v. Craddock*, 70 Mo. 638; *Zeidler v. Walker*, 41 Mo. App. 118; *Love v. Owens*, 31 Mo. App. 501.   (2)   The instructions given by the court covered the entire case and every issue in it.   It was, therefore, unnecessary to give all the instructions asked on both sides, although some of them doubtless enunciated correct principles of law.   A failure to give such instructions, when others which were given cover the ground, is not error.   McQuillin's Dig., p. 263, sec. 107.   (3) The court did not err in defining the meaning of the term "satisfactory" lease.   In matters of utility the refusal to accept can not be capricious.   Rapalje on Real Est. Brokers, pp. 183, 184; *Sloan v. Hayden*, 110 Mass. 141; *Pope Iron Co. v. Best*, 14 Mo. App. 502; *Braunstein v. Ins. Co.*, 1 Best & Smith, 782; *Lord v. Stevens*, 1 Y. & C. 222; Lawson on Contracts, sec. 409; *Cutler v. Cutler*, 98 N. Y. 628; 21 Am. and Eng. Encyclopedia of Law, 714; *Hart v. Hoffman*, 44 How. Pr. 168.

Burgess, J.—On the twentieth of October, 1892, defendants, Moses M. and Moses Greenwood, Jr., were partners, doing a real estate business in the city of St.

Louis under the name of Greenwood & Company, and on that day they made a proposition, in writing, to plaintiff, that if he would negotiate a satisfactory lease for ninety-nine years on the southwest corner of Sixth and Chestnut streets, when the same was duly executed they would pay him for such services the sum of $5,000.

On the day following, plaintiff, having procured a purchaser for the leasehold, went to the office of defendants, so informed them, and asked them to reduce their proposition to writing, as the party with whom he had contracted for the lease desired it. Defendants then wrote out and signed the following:

"October 19, 1892.

"*Jos. J. Mullally, Esq., City.*

DEAR SIR:—We are prepared to lease to you the southwest corner of Sixth and Chestnut streets, one hundred and twenty-seven and one half feet on Chestnut street by forty-eight feet on Sixth street, bounded on the west by a private alley fifteen feet wide, on the following conditions, namely: Annual rental of $7,000, payable quarterly in advance, lessee to pay the taxes; term of lease, ninety-nine years; building to cost at least $75,000, to be built within four years, and until such building is erected, lessee to give satisfactory bond for the rental until the building is erected; lease to contain the usual covenants in such leases. This proposition subject to withdrawal at any time, without notice.           Yours truly,

"GREENWOOD & CO."

Plaintiff then closed the contract for the lease according to defendants' proposition, received a payment of $500 on it, and so informed defendants, but they refused to close the contract or to perfect the lease. Plaintiff having complied with the contract, as he alleged, brought this suit for the $5,000 which he claims is due him on the contract.

Defendants in their answer admitted the partnership, but denied all other allegations in the petition. The answer then alleged that at the time the memorandum sued upon was signed and delivered plaintiff was informed and well understood that defendants were acting with respect thereto for other persons interested in said property, viz., one Otto L. Mersman, and that before any lease of said property negotiated by plaintiff would be satisfactory, it was necessary first to submit the same to said Mersman for his approval, and unless it was satisfactory to him it would be unsatisfactory to defendants and must be rejected. That plaintiff never negotiated any lease for said property satisfactory to either of defendants, or to said Mersman, and that they are not indebted to him in any amount. Plaintiff replied denying all new matter contained in the answer.

There was a verdict and judgment in favor of plaintiff for $5,101.66 2-3, and defendants appealed.

The evidence on the part of plaintiff showed that, when he reported to defendants that he had made a contract for the lease, as proposed by them, to S. F. Scott and others, and had received in part payment therefor Scott's check for the sum of $500, which he then indorsed to them, defendant Moses Greenwood, Jr., told him to write out whatever kind of receipt he wanted and he then wrote the following:

"St. Louis, October 21, 1892. Received of S. F. Scott and others the sum of five hundred dollars ($500) on account of first quarter's payment on ninety-nine year lease of parcel of ground on the southwest corner of Sixth street by one hundred and twenty-seven feet six inches on Chestnut street to a private alley, said lease to date from January 1, 1893, and balance of money so be paid as soon as satisfactory lease and bond is made by both parties, as per Greenwood

& Co.'s letter to Joseph J. Mullally of October 19, 1892." Which Greenwood looked over and said, "I guess that it is all right." But defendants did not sign the receipt and refused to receive the check, which was good for the amount for which it called.

As to what occurred at the time of this conversation between plaintiff and Moses Greenwood, Jr., he, Greenwood, testified that he refused to accept the check of Scott, and told plaintiff that he could not do so until he saw Mersman, who was interested in the property; that he never agreed that the lease should begin from the first of January, 1893, but stated to plaintiff that he had no authority to make that change, and that Scott's name would not be satisfactory to either Mersman or himself.

Aside from what has been stated with reference to the conversation between plaintiff and Moses Greenwood, Jr., the proof tended to show that plaintiff had substantially complied with the terms of the agreement between himself and defendant with respect to the lease of the property.

At the close of the evidence defendants asked, and the court refused to instruct the jury that, under the pleadings and evidence, plaintiff could not recover; but the court did instruct as follows:

"If you find from the evidence that the plaintiff did negotiate a lease of the real estate named, the question then arises, was it a satisfactory lease within the meaning of that term in the written agreement. That term does not mean that the defendant had the right arbitrarily to pronounce the lease unsatisfactory, and therefore refuse to execute it and be released from the agreement to pay the plaintiff for his services; but it means a compliance with the terms of the proposed lease as understood between the plaintiff and the defendants at the time the written agreement of October

20 was made.   And if the terms proposed by the plaintiff at the time he tendered the $500 check that has been mentioned in the evidence were different from the terms understood between the parties at the time the aforesaid agreement was made, you can not consider that such terms were satisfactory within the meaning of the agreement, unless you are satisfied from the evidence that the defendants agreed to those terms as satisfactory when so proposed.   What were the terms of the proposed lease as understood between the parties at the time the aforesaid agreement was made, and whether or not the terms proposed by plaintiff at the time the check was offered as aforesaid, were agreed to as satisfactory by the defendants, are questions for you to decide under the evidence in the case.

"If at the time the written agreement in question was executed the plaintiff knew or was informed that Mr. Mersman was one of the owners of the property, and that his consent to the lease had to be obtained before it could be executed, and if the failure to execute the lease was because of his failure to approve the terms, or of his declining to join in the execution, then it could not be said that the failure to execute the lease was because of the defendant's refusal to do so within the meaning of these instructions, and in that event the defendants are not liable.   But, unless at the time the written agreement in question was executed the plaintiff knew or was informed that Mr. Mersman was one of the owners of the property, and that his consent to the lease had to be obtained before it could be executed, it is immaterial so far as the rights of the parties to this suit are concerned, whether Mersman was willing to execute the lease on the terms offered by the plaintiff or not.

"Therefore, bearing in mind the foregoing instructions and explanations of the terms used, if you find

from the evidence that the plaintiff, Mullally, negoti-
ated a lease of the premises at the southwest corner of
Sixth and Chestnut streets for ninety-nine years upon
terms satisfactory to defendants, Greenwood & Com-
pany, and if you also find from the evidence that the
party with whom the plaintiff made the negotiation
was ready, willing and able to comply with the terms
and execute the lease on his part, and if you also find
from the evidence that the lease was not executed
because of the refusal of the defendants to execute it,
then your verdict should be for the plaintiff, but, unless
you are satisfied from the evidence of all these facts,
your verdict should be for the defendants.''

Defendants' first insistence is that the court should
have sustained their demurrer to the evidence, and, in
failing to do so, committed reversible error. This con-
tention is in most part predicated on the statements of
Greenwood, Jr., to the effect that, at the time the
receipt, of date October 21, 1892, was presented to him
by plaintiff, he informed plaintiff that Mersman was
the principal owner of the property, and the one to be
satisfied with its lease, which it is claimed was not
denied by plaintiff, and the further facts that under
the proposition of October 19, 1892, the lease term was
to commence as soon as made, and that as the propo-
sition made by plaintiff for the lease to commence
January 1, 1893, was not an acceptance of the offer of
defendants, there was never an agreement, the minds
of the parties never having met.

As to what occurred at the time of the conversa-
tion between plaintiff and Moses Greenwood, Jr., while
there was no specific denial by plaintiff as to some of
the statements which Greenwood, Jr., testified were
made by himself at that time, plaintiff undertook to
testify to the whole conversation between them, and
because of his failure to deny some statements made by

defendant, to which his attention may not have been called, we are not inclined to hold for that reason they must be taken as being absolutely true. Such matters, as well as all others included in this contention, were for the consideration of the jury.

In the second instruction the court defined "satisfactory lease," within the meaning of the terms of the written agreement, as being a compliance with the terms of the proposed lease as understood between plaintiff and defendant at the time the written agreement of October 20 was made, and to this, exception is taken.

Under the facts as disclosed by the record, the words "satisfactory lease" were correctly defined, for the court would not have been justified, from the facts and circumstances as disclosed, in holding that the plaintiff intended to submit the result of his labors to the caprice of defendants or any one of them, to be approved or rejected at will, regardless of any just cause or excuse therefor. We are not disposed to construe those words so as to produce a result so disastrous to plaintiff and inconsistent with the ordinary experience of mankind.

Most of the cases in which it has been held that the purchaser is to be satisfied and is the sole judge of the article to be furnished, are cases involving articles of fancy, taste; then such article may be arbitrarily rejected as unsatisfactory. Thus where the plaintiff contracted to make the defendant a satisfactory suit of clothes, and defendant returned the suit because unsatisfactory, it was held that an action for the price could not be maintained. *Brown v. Foster*, 113 Mass. 136; *Zaleski v. Clark*, 44 Conn. 218; *Gibson v. Cranage*, 39 Mich. 49.

In such case whether the employer or purchaser, as the case may be, acted upon *reasonable grounds* or

not can not be inquired into. And it has been held that it is even doubtful whether the *good faith* of the employer's decision can be inquired into. *Glenny v. Lacy*, 1 N. Y. Supp. 513; *Campbell, etc., Co. v. Thorp*, 36 Fed. Rep. 414.

So it has been said that, although the purchaser's objections may have been ill founded or unreasonable in the opinion of others, yet, if they were made in good faith, he had the right to reject the article. *Seeley v. Welles*, 120 Pa. St. 69; *Singerly v. Thayer*, 108 Pa. St. 291.

There are other cases which do not pertain to articles of taste or fancy which hold that it is a matter of contract, and that if the parties by contract agree that the article sold, or the services rendered, are warranted "or agreed" to give satisfaction, the purchaser or master is vested with full power to determine whether the article or the work is satisfactory; and the reasonableness of the grounds of dissatisfaction can not be inquired into by the court in an action by the vender for the purchase money, or in an action by the servant for damages for his discharge. *McCarran v. McNulty*, 7 Gray, 139; *Allen v. Mutual Compress Company*, 14 S. Rep. 362; *Wood, etc., Machine Co. v. Smith*, 50 Mich. 570; *Railroad v. Brewer*, 67 Me. 295; *Cline v. Libby*, 49 N. W. Rep. 832; *Tyler v. Ames*, 6 Lans. 280; *Osborne & Co. v. Francis*, 38 West. Va. 312.

Again, it has been held that, if the task to be performed does not involve matter of taste, fancy or judgment, but of common experience, such as an ordinary job of mechanical work, or the quality of material, a different rule applies, and in such cases the law will say that, what in reason ought to satisfy a contracting party does satisfy him. *Duplex Boiler Co. v. Garden*, 101 N. Y. 387; *Brooklyn v. Railroad*, 47 N. Y. 475; *Miesell v. Ins. Co.*, 76 N. Y. 117. And that "the prom-

isor is supposed to undertake that he will act reasonably and fairly, and found his determination on grounds which are just and sensible, and from thence springs a necessary implication that his decision in point of correctness and the adequacy of the grounds of it are open considerations and subject to the judgment of judicial triers." *Wood, etc., Machine Co. v. Smith, supra; Daggett v. Johnson*, 49 Vt. 345; *Hartford, etc., Mfg. Co. v. Brush*, 43 Vt. 528; *Pope Iron and Metal Co. v. Best*, 14 Mo. App. 502.

We do not think that the defendants had the right to say, arbitrarily and without cause, that the lease contracted for by plaintiff for them was not satisfactory to them. It was their duty to act fairly and honestly, and in accordance with the reasonable expectations of the plaintiff, as implied from the contract, its subject-matter, and the facts and circumstances surrounding its execution, its nature, object and purpose.

The instructions seem to be in accord with these views, but, as they undertook to cover the whole case, should have embodied the substance of the second instruction asked by defendant, or have given it as asked. It is as follows:

"If the jury find from the evidence that, plaintiff, previous to October 20, 1892, had been negotiating with defendants for a lease of the premises on the southeast corner of Sixth and Chestnut streets for a ninety-nine year lease at an annual rental of $7,000 for said term, and that on the said twentieth day of October, 1892, plaintiff requested defendants to make an agreement to pay him a commission for negotiating a satisfactory lease for ninety-nine years at said annual rental, and that plaintiff wrote out a statement of the terms and name of the lessee he proposed on the paper read in evidence dated October 21, 1892, and showed same to the defendants, and that defendants informed him that

they were also acting for others, among them one Otto L. Mersman, and that, before any lease would be accepted by defendants as satisfactory, it would have to be submitted to said Mersman for his approval, and that at the time the defendants objected to the proposed lease, stated in said paper, dated October 21, 1892, because the proposed lease was to commence at a future day, January 1, 1893, and if the jury find that the plaintiff assented to this submission to said Mersman, and that it should be satisfactory to defendants and said Mersman, and that after that, the said defendants executed and delivered to plaintiff the memorandum of October 20, 1892, read in evidence, then the court instructs the jury that these facts and this memorandum constituted the agreement between plaintiff and defendants, and that if you find from the evidence that the only lease proposed by plaintiff to defendants and said Mersman, was for a lease of said premises to one S. F. Scott for ninety-nine years, to commence on January 1, 1893, and that said date of the commencement for said lease of January 1, 1893, was not accepted as satisfactory by defendants and said Mersman, then the court instructs you that the said proposed lease was not a satisfactory lease within the meaning of the contract aforesaid, and plaintiff can not recover, and you must find a verdict for defendants."

It is true that the instructions given seem to present the questions raised by the instruction last quoted, but no so clearly and pointedly, embracing, as it does, matters which we think defendants were entitled to have sharply presented to the jury.

From what has been said, the judgment must be reversed and the cause remanded. It is so ordered. All of this division concur.