ROBERT A. BURNS, Appellant, v. ADAM REIS, Respondent.

St. Louis Court of Appeals, February 6, 1917.

1. **CONTRACTS: Performance: Discretionary Matters.** The doctrine that, where the thing to be done under a contract does not pertain to articles of taste or fancy and it is stipulated that it shall be done to the satisfaction of one of the contracting parties, the party to be satisfied cannot act arbitrarily or capriciously, and that the law will say that he is satisfied with that which a contracting party ought to be satisfied, is by no means universally approved, but it may be said, broadly speaking, to have the sanction of the courts of this State.

2. ———: **Reserved Right to Terminate: Construction of Contract.** A contract provided that B should procure plans for three or more houses to be built on eight lots owned by R, with capital to be furnished by the latter, and that B should superintend the construction thereof, and, upon completion, should use his best efforts to dispose of the same at prices to be approved by R. After providing for a division of any profits realized from these operations, the contract further provided that, upon the completion of three houses, should the continuance of building prove unprofitable, in the opinion of R, he should have the right to discontinue the building of any further houses. *Held,* that the matter for R to determine, in order to warrant the exercise of the right to discontinue, was whether it would be unprofitable to continue building on the land, under the contract, and not whether it would or would not be profitable to build on the land, under other arrangements, and it was sufficient, if, in arriving at such determination, he acted in good faith and with a just motive.

Burns v. Reis.

3. ———: ———: Rights of Promisor: "Good Faith." Where a contract gives the promisor the right to discontinue, if, in his judgment, further operations under the contract would be unprofitable, a determination by him that the contract should be discontinued because this condition obtains, is conclusive, if he acts in good faith and with a just motive; "good faith" meaning that the determination must have some tenable ground to stand upon, and not rest alone upon dogmatic assertion.

4. ———: ———: ———: Good Faith of Promisor: Sufficiency of Evidence. A contract provided that B should procure plans for three or more houses to be built on eight lots owned by R, with capital to be furnished by the latter, and that B should superintend the construction thereof, and, upon completion, should use his best efforts to dispose of the same at prices to be approved by R. After providing for a division of any profits realized from these operations, the contract further provided· that, upon the completion of three houses, should the continuance of building prove unprofitable, in the opinion of R, he should have the right to discontinue the building of any further houses. After the completion of three houses, R notified B that, in his opinion, it would be unprofitable to continue to build houses under the contract, and that, therefore, he had determined to discontinue the ·building of houses thereunder. R divided with B the profits on the three houses constructed, and thereafter he built five houses on the remaining five lots, from the sale of which he realized a profit. In an action by B for one-half of such profit, *held* that the evidence was sufficient to warrant a finding that R's opinion, that it would be unprofitable to continue to build houses under the contract, was formed in good faith, justifying his discontinuance of the operations under the contract, and hence it is *held* that a judgment for defendant was supported by the evidence.

5. ———: ———: ———: ———: Instructions., In such case, the court gave a declaration of law, that if defendant honestly and in good faith formed the opinion that, for him to continue with the erection of the remainder of the houses would be unprofitable, and, holding such opinion, he served notice thereof on plaintiff, plaintiff was not entitled to recover, even though the court should find that defendant formed such opinion from facts and circumstances which might not have induced the same opinion in the mind of some other persons, or the court, sitting as a jury. *Held*, that the latter portion of the instruction is a correct statement, though superfluous.

6. Appellate Practice: Review: Weight of Evidence. It is not the province of appellate courts to pass judgment upon the facts, in an action of law.

Appeal from St. Louis City Circuit Court.—*Hon. Eugene McQuillin,* Judge.

AFFIRMED.

*S. T. G. Smith* and *Thos. S. Meng* for appellant.

(1)   The provision in the contract between the appellant and the respondent reading "should the continuance of building prove unprofitable in the opinion of said Reis, said Reis reserves the right to discontinue the building of any more houses on said land above mentioned and terminate this contract" did not, as a matter of law, give the respondent the right to cancel the contract in the face of the uncontradicted testimony that a profit had been made on the three houses, and the admissions in the answer of the respondent that a profit was made on the five houses.   Berthold et al. v. St. Louis Electric Const. Co., 165 Mo. 280; Mullally v. Greenwood et al., 127 Mo. 138; Barnett v. Sweringen, 77 Mo. App. 64; Richison v. Mead, 11 S. D., 639; Keeler v. Clifford, 165 Ill. Rep. 544; Duplex Safety Boiler Co. v. Garden, 101 N. Y. 387; Lilienthal Bros. v. Stearns, 121 Federal, 197.   (2) Where the thing to be done under a contract does not pertain to articles of taste or fancy, and the contract provides that the thing to be done shall be done satisfactorily to one party, or the other, and the power of determining whether a thing is satisfactory to the other party is left to the one for whom the work is being done, the party to whom the determination of the question of being satisfied is left cannot act in an arbitrary manner, the law being "such satisfaction is not an arbitrary or capricious one.   That which the law should say a contracting person ought to be satisfied with, that the law will say he is satisfied with." Berthold et al. v. St. Louis Electric Const. Co., 165 Mo. 280; Mullally v. Greenwood et al., 127 Mo. 138; Barnett v. Sweringen, 77 Mo. App. 64; Richison v Mead, 11 South Dakota, 639; Keller v. Clifford, 165 Ill. 544; Duplex Safety Boiler Co. v. Garden, 101 N. Y. 387; Lilienthal Bros. v. Stearns, 121 Federal, 197.   (3) Profitable in the opinion of the defendant means a price which would

yield the defendant a reasonable profit over and above the gross costs of the land and the material, labor and other expenses connected with making up the total cost of the houses involved by the contract sued on. Rhodes v. Holladay-Klotz Land & Lumber Co., 105 Mo. 279. The opinion of the respondent that the continued building of houses under the contract sued on would prove unprofitable, must have been induced by such facts as would have induced the same opinion in the minds of reasonable persons having before them the same facts, and an opinion arrived at in any other manner is not arrived at in good faith and cannot be the basis for the cancellation of the contract sued on. Berthold et al. v. St. Louis Electric Const. Co., 165 Mo. 280; Mullally v. Greenwood et al., 127 Mo. 138; Barnett v. Sweringen, 77 Mo. App. 64; Richison v. Mead, 11 S. D. 629; Keeler v. Clifford, 165 Ill. Rep. 544; Duplex Safety Boiler Co. v. Garden, 101 N. Y. 387; Lilienthal Bros. v. Stearns, 121 Federal, 197; Rhodes v. Holladay-Klotz Land & Lumber Co., 105 Mo. 279.

*Wagner & Miller* for respondent.

(1) The provision in the contract in suit that "should the continuance of building prove unprofitable in the opinion of said Reis, said Reis reserves the right to discontinue the building of any more houses on said land above mentioned and terminate this contract," gave the respondent a clear legal right at his own option to cancel the contract as to the unperformed part thereof and to build the remaining five houses himself, upon forming his opinion that the continuance of building with appellant would prove unprofitable to him; regardless of the facts that a profit had been made by them on the first three houses and that a profit was thereafter made by respondent on the remaining five houses, and regardless of whether respondent had any just cause or excuse for taking such action. 9 Cyc, "Contracts," pages 618-625, and cases cited and discussed in notes; Cann v. Rector, Wardens, Etc., 111 Mo. App. 164, 1. c. 190-193, and cases cited at bottom of page

192; Blaine v. Publishers Geo. Knapp & Co., 140 Mo. 241, and cases cited therein; Miller v. Pepperling, 185 Mo. App. 222; Nelson v. Von Bonnhorst, 29 Pa. St. 352; Allen v. Vose, 34 Hun. (N. Y.) 57. (2) Although not legally required to do so, respondent assumed and submitted to the trial court the issue of his good faith in terminating the contract. Such issue being one for the jury, the finding of the court, sitting as a jury, of the fact of respondent's good faith, upon competent evidence and under a proper declaration of law predicating such issue, operates as a special verdict and is conclusive on that issue. Miller v. Pepperling, 185 Mo. App. 222; Church v. Shanklin, 95 Cal. 626, 17 L. R. A. 207, and cases cited in L. R. A. note; Singerly v. Thayer, 108 Pa. St. 291, and cases cited; Cann v. Rector, Wardens, Etc., 111 Mo. App. 164, 1. c. 190-193. (3) The third declaration of law, given for respondent, correctly states the rule of law governing the case and also predicates the issue of respondent's good faith so voluntarily assumed by him; and the finding and judgment thereunder, being based on ample evidence, are for the right party and should be affirmed.

ALLEN, J.—This is an action to recover damages for the alleged breach by defendant of a written contract entered into between plaintiff and defendant. The cause was tried before the court without the intervention of a jury, a jury having been waived, and resulted in a judgment for the defendant, from which the plaintiff prosecutes the appeal before us.

It appears that, at the instance of plaintiff, a member of a firm of real estate agents, defendant, who had retired from active business, contracted to purchase from a third person a tract of vacant land fronting on Kennerly avenue, a street in the city of St. Louis, in order that plaintiff might build small houses thereon and sell the same under contract with defendant. Thereafter, on October 11, 1909, a written contract was entered into between plaintiff and defendant, whereby plaintiff agreed "to procure plans, at his expense, for three or more

one-story houses'' to be built on said land, each on a lot of twenty-eight feet frontage, and ''to invite bids and make contracts for the erection of same,'' all to be approved by defendant, and to fully superintend the erection thereof, submitting all plans and specifications to defendant for approval.' The contract then contained the following paragraph, viz:

''Upon completion of three houses, said Burns (plaintiff) will use his best efforts to sell said houses at prices to be approved by said Reis (defendant), and should the continuance of building prove unprofitable in the opinion of said Reis, the said Reis reserves the right to discontinue the building of any more homes on said land above mentioned and terminate this contract, and make equal division of said profits with said Burns on the three houses already erected, first deducting price of land, cost of survey, and abstract of title, and after such discontinuance, this contract shall be null and void.''

The contract then provided that, after reimbursing defendant for his investment in the land, with interest, and for ''cost of survey'' and ''cost of certificate of title,'' the profits derived from the sales of the houses were to be equally divided between plaintiff and defendant; and that in case the profits should be represented wholly or in part by ''deeds of trust or other negotiable paper,'' the same to be equally divided between the parties, if they could agree upon such division, otherwise the ''total amount of notes'' would be offered for sale and the proceeds equally divided. It was further agreed that plaintiff would pay for all advertising.

Thereafter defendant consummated the purchase of the land, which was subdivided into eight lots of twenty-eight feet frontage each. Building loans were then made on three of the lots, through the medium of a ''straw man,'' and plaintiff proceeded to erect three houses upon these lots. These three houses were substantially completed by about April 1, 1910, though there is evidence that there were certain defects and deficiencies therein—

a matter to which we shall later refer. About the time when they were substantially completed, they were sold to respective purchasers, in the manner and under circumstances to be hereinafter noticed. A settlement was had between plaintiff and defendant, as to these three houses, on August 13, 1910, at which time the notes and cash on hand were applied and divided in accordance with the contract, and it is conceded that a profit of $544.33 was thus realized on each house.

On April 22, 1910, the defendant notified plaintiff that it was defendant's opinion that it would be "unprofitable to continue the building of any more or further houses, or buildings, in accordance with the agreement;" and that defendant had "decided to discontinue the building of any more houses upon the land above mentioned, and to terminate and finally end the contract," which defendant declared was thereby terminated and ended.

Thereafter the defendant erected five houses on the remaining five lots of the tract mentioned. It is conceded that a short time prior to the giving of the notice to plaintiff above mentioned, defendant consulted the architect who, at plaintiff's instance, had prepared the plans for the first three houses, respecting the furnishing of plans for five additional houses to be erected on the remaining lots, which plans the architect afterwards furnished defendant. And it is conceded, also, that shortly prior to the giving of said notice defendant obtained from a planing mill company an estimate upon the "mill-work" for the additional five houses, though no contract was made therefor by defendant until May 6, 1910, when he contracted for the mill-work on three of these houses. Defendant admits that on each of these five houses, which were completed and sold prior to the institution of this action, he realized a profit of $500, making a total of $2500 profit on all thereof. They were of the same general character as the three houses built by plaintiff, but, it is said, were wider and differed somewhat in details of construction.

Plaintiff's suit proceeds upon the theory that defendant breached the written contract aforesaid, the damages for such alleged breach being laid at $1250, one-half of the net profits realized by defendant from the sale of the five additional houses erected by him upon the remaining lots mentioned. It is unnecessary to notice the details of the pleadings, which are lengthy. The answer, admitting, among other things, that profits were realized on the three houses built by plaintiff, as above stated, and that defendant realized a profit of $500 on each of the five additional houses built by him, denies that defendant failed to comply with the contract on his part, averring, in substance, that in accordance with the terms of the contract defendant terminated the same because it was his opinion that it would be unprofitable to continue building operations as therein contemplated.

Upon the trial defendant testified at length as to his reasons for arriving at the opinion, said to have been formed by him, that to continue building operations under the contract, i. e., to allow plaintiff to continue with such building, would be unprofitable. This testimony, and other testimony adduced in defendant's behalf, was introduced for the purpose of showing that the circumstances, upon the whole, were such as to afford a tenable basis for an honest opinion that it would be unprofitable for defendant to continue under the contract, and to show good faith on defendant's part in seeking to terminate the contract on this ground. This testimony goes to show that plaintiff did not provide the plans for the three houses built by him, at his own expense, but that the cost thereof was put in as a part of the cost of construction; that plaintiff had no general contractor for the erection of the houses, but had a carpenter to superintend the work, who was not competent therefor, and that plaintiff himself merely visited the house daily, spending not to exceed thirty minutes per day on the premises; that the subcontracts were let to persons having desk-room in plaintiff's office, without the taking of other bids, over defendant's objections— though it appears that defendant afterwards approved these contracts; that in erecting the houses much de-

fective work was done, and that defendant, who had had some little experience in building, spent much of his own time upon the premises in an effort to have the work done properly, in which effort he was opposed by plaintiff and the latter's workmen; and that when defendant complained to plaintiff of the defective and unworkmanlike work upon the houses plaintiff said: "The people who buy this kind of houses do not know any better."

The testimony as to the defects and deficiencies in the houses need not be here rehearsed in detail. It consists not only of defendant's own testimony but of the testimony of other witnesses as well, and tends to show that the brick walls, in part at least, were not properly constructed; that two of the three rear or kitchen doors were three or four inches too short for the frames so that it was necessary to "splice" them with wooden strips; that furnaces were defective, and that there were various other defects or deficiencies in the houses. It is also said that the rear yards were not filled to the proper level, and that defendant found it necessary to haul earth at his own expense to do such filling; that a granitoid sidewalk was made of insufficient width, and that certain other things to be done about the premises were improperly done or omitted.

And in testifying defendant said: "Mr. Burns not being there enough to superintend the houses, I did not want him to go ahead and build any more houses the same as they were built, for the reasons which I had; I thought that the houses not being all sold, being erected like they were, if they were not sold of course I would have the houses on my hands." Defendant also testified that upon concluding not to continue under the contract he offered to sell to plaintiff the remaining five vacant lots at the same, or about the same, price which he had paid for them, but that this offer was refused.

It appears that the three houses erected by plaintiff under the contract were sold on small cash payments, for $3333 each; each purchaser assuming a first deed of trust for $2000, and a second deed of trust to be

paid off in installments. Of the three purchasers but one was procured by plaintiff's efforts. And to procure one of them defendant paid a commission of $50 to one Muren, a real estate agent. The purchasers all appeared as witnesses for defendant and testified as to defects and deficiencies in the houses and premises; and it appears that one of them—the purchaser procured by plaintiff— failed to keep up his payments, moved from the house which he had purchased and forfeited his title thereto.

The court, finding for defendant under the pleadings and evidence, gave certain declarations of law, at defendant's request, one of which is as follows:

"The court declares the law to be that if the court sitting as a jury finds and believes from the evidence that upon the substantial completion of the first three houses built upon defendant's land under the contract between them, the profits of which were divided between plaintiff and defendant, all as alleged and admitted in the pleadings, the defendant honestly and in good faith formed the opinion that for him to continue with the further performance of said contract, by the erection thereunder with plaintiff of additional houses on the remaining part of said land, would be unprofitable to defendant; and that holding such opinion defendant served upon plaintiff the notice, as alleged and admitted in the pleadings, that he had formed such opinion and had decided to discontinue building any more houses on said land and to terminate said contract; then, if the court so finds and believes, even although the court should also find and believe that defendant formed such opinion from facts and circumstances which might not have induced the same opinion in the mind of some other person or in the mind of the court sitting as a jury, plaintiff is not entitled to recover, and the finding of the court sitting as a jury must be for the defendant."

Plaintiff, appellant here, contends that the court erred in giving this declaration of law, and that under the admitted and undisputed facts in the case the finding and judgment should have been for plaintiff.

The assignments of error may be reduced to these two contentions, and they may be considered and disposed of together.

Plaintiff's position, in general, may be stated to be that defendant could not arbitrarily cancel the contract, under the circumstances, but was required to act in good faith in seeking to terminate it under the clause thereof above quoted; and that the admitted and undisputed facts conclusively show that defendant could not have honestly and in good faith formed the opinion which he claims to have formed, but demonstrate that the notice served upon plaintiff for the purpose of terminating the contract, was not given in good faith, but for the fraudulent purpose of attempting to evade the obligations of the contract on defendant's part.

Plaintiff's learned counsel argues that where the thing to be done under a contract does not pertain to articles of taste or fancy, and it is stipulated that it shall be done to the satisfaction of one of the contracting parties, the party to be satisfied cannot act arbitrarily or capriciously in the matter; and that the law will say that he is satisfied with that which a contracting party under the circumstances ought to be satisfied. And in support of this are cited: Berthold et al., v. St. Louis Electric Const. Co., 165 Mo. 280, 65 S. W. 784; Mullally v. Greenwood, et al., 127 Mo. 138, 29 S. W. 1001; Barnett v. Sweringen, 77 Mo. App. 642; Richison v. Mead, 11 S. D. 639; Keeler v. Clifford, 165 Ill. Rep. 544; Duplex Safety Boiler Co. v. Garden, 101 N. Y. 387; Lilienthal Bros. v. Stearns, 121 Fed. 197.

This doctrine is by no means universally approved (see 9 Cyc., p. 618 et seq. and authorities cited), but it may be said, broadly speaking, to have the sanction of our courts. However, the case before us is not one where work has been done, or something has been furnished under a contract requiring that the same shall be done or furnished, to the satisfaction of the promisor. The action is for profits which plaintiff alleges he would have made had he been permitted to continue the building operations. And the contract, in terms, leaves it to

defendant to determine whether or not, in his opinion, it would be profitable to continue building operations thereunder.

At this point we may say that we agree with defendant's contention (if the matter may be said to be seriously in dispute) that the contract must be interpreted to mean that defendant was to determine whether, in his opinion, it would be profitable to continue building on the land under the contract—i. e., to continue to allow plaintiff to erect houses thereon under the contract —and not whether it would be profitable to build at all on the remaining lots.

The contract, indeed, does not in terms provide that plaintiff shall erect eight houses, one on each of the eight lots, but provides for the erection by plaintiff of ''three or more one-story houses,'' and then proceeds to give defendant the right to terminate the contract, after the erection of the three houses, ''should the continuance of building prove unprofitable'' in his opinion. This must be taken to mean that defendant who furnished all of the capital, was to be the sole judge as to whether the circumstances as a whole surrounding the erection of the first three houses made it appear that it would be profitable to allow plaintiff to continue building operations or otherwise. Under the circumstances, all that could be required of defendant, we think, was that he act honestly and in good faith in forming his opinion on the subject. The argument is incidentally advanced by defendant's counsel that under the contract defendant had the absolute right to terminate the contract when he sought to do so, but defendant does not stand upon this, and we need not consider it since the case was tried below by defendant upon the theory that he was required to act in good faith.

To determine, or form an opinion, whether it would be profitable to continue under the contract or otherwise, involved the exercise of defendant's judgment in the premises. And it is said that where the fancy, taste, sensibility or judgment of the promisor is involved, ''the promisee is practically debarred from questioning the

196 M. A.—45

ground of decision on the part of the promisor or investigating its propriety.'' Whether the cases from our courts have gone this far is a matter which we need not decide; but we regard it as altogether clear that they at any rate go to the extent of holding that under such circumstances it is sufficient, at least, if it appear that the promisor acted in good faith and with a just motive. [See Cann v. Rector, Wardens, etc., 111 Mo. App. 164, 85 S. W. 994; Blaine v. Knapp & Company, 140 Mo. 241, 41 S. W. 787.] And we may agree that good faith ''must have some tenable ground to stand on'' (Hess v. Watkins, —— Mo. App. —— 183 S. W. 351) and not rest alone upon the dogmatic assertion of the party required to exercise it. But in the case before us we regard the evidence adduced as affording a sufficient basis for a finding that the opinion said to have been formed by defendant was in fact formed in good faith, and his assertion thereof not merely a subterfuge to cloak an ulterior motive while evading liability on his contract. .

It is true that profits were made on the three houses built by plaintiff, and on those subsequently built by defendant as well. But, in view of the evidence touching the matter, it does not follow that profits would have been realized on the additional houses had plaintiff been permitted to erect them, nor that defendant believed that such would be the case. According to defendant's evidence he had much difficulty with plaintiff respecting the building of the first three houses, particularly as to the workmanship thereupon. They had been sold, but small amounts only had been received in cash; and the purchasers were more or less dissatisfied, and one in fact forfeited his title. Defendant said that he feared that if plaintiff were permitted to continue to erect houses, built as were the first three, defendant would have the houses on his hands; and we cannot say that there was no ground for apprehension on this score.

Though profits then appeared to have been made on the first three houses, defendant might well have concluded that it would not be profitable to continue under the contract. And the contract itself appears to contem-

plate the possibility that this very situation might arise, for it provides that if the contract be terminated by defendant, unc⌐r the clause quoted, after the building of three houses he is· to ''make equal division of said profits with said Burns on the three houses already erected.''

We do not, of course, pass judgment upon the facts, for that is not within our province. But as to this phase of the case we merely hold that the record discloses sufficient evidence, of a substantial character, to sustain the finding of the trial court sitting as a jury.

What we have said above, in effect, disposes also of the contention that the trial court erred in giving the declaration of law quoted above; but perhaps we ought briefly to separately notice one attack thereupon. It is urged that the delaration of law is erroneous in declaring that if the court finds the facts as therein previously. required, plaintiff is not entitled to recover, ''even although the court should also find and believe that defendant formed such opinion from facts and circumstances which might not have induced the same opinion in the mind of some other person or in the mind of the court sitting as a jury.'' It is argued that defendant's opinion ''must have been induced by such facts as would have induced the same opinion in the minds of reasonable persons having before them the same facts.'' This would make it a question for the jury to say what a reasonable man ought to have done under the circumstances of the case; whereas the contract explicitly leaves the matter to the opinion or judgment of the defendant. It is one thing to say that such opinion must be honestly formed, in good faith, and quite another to say that it must be such as a reasonable man would have entertained. We see no reversible error by reason of the addition of these words to the declaration of law, though they appear to be superfluous.

·It follows that the judgment should be affirmed, and it is so ordered. *Reynolds, P. J.,* and *Becker, J.,* concur.