### 44186. McKOY v. BLALOCK et al.

ARGUED JANUARY 7, 1969—DECIDED JULY 29, 1969—

*Gilbert & Carter, Fred A. Gilbert,* for appellant.

*Hansell, Post, Brandon & Dorsey, Gary W. Hatch, Nall, Miller, Cadenhead & Dennis, James W. Dorsey, Lowell S. Fine,* for appellees.

PER CURIAM. This case arises out of an amended complaint brought by D. Braxton Blalock, Jr., the seller in a real estate transaction, against Dean D. McKoy, doing business as McKoy Realty Co., the broker in the transaction, and the broker's bondsman.

The action sought recovery of $2,500 of a $5,000 deposit of earnest money made with the broker by The Ravenel Company, Inc., the corporate purchaser, which had failed to carry out the contract of purchase. The broker as third-party plaintiff brought a complaint against the corporate purchaser, the Ravenel Company, Inc., seeking to recover the full commission, less the $5,000 earnest money already paid based upon a provision in the contract providing for such payment by the purchaser if the purchaser should fail to consummate the sale. On the trial the main issue was the construction of a provision of the contract giving the purchaser the right to avoid it on certain conditions and forfeit the $5,000 earnest money deposit, in which event one-half of the deposit went to the seller and one-half to the broker. The sale contract provision giving rise to this question is as follows: "Seller warrants that the property described is presently zoned R-100 and if it should be determined that it is not so zoned, or if purchaser determines that it is not feasible to develop said property into a residential subdivision *as contemplated,* purchaser, at his option, may void this contract, in which case the earnest money shall be forfeited as liquidated damages and no further obligations will exist under the contract. This clause shall apply only during the 180-day period prior to date of closing of this transaction. In case the contract is voided under this clause the liquidated damages shall be divided one-half to seller and one-half to real estate broker." (Emphasis supplied.) There was no evidence showing that the expression "feasible to develop" in such a case had the narrow meaning of applying to the carrying out of the contract of purchase.

The other main issue on the trial was whether notice of the option to void or rescind the sale contract was given within the 180 days stipulated.

There was introduced in evidence the following letter from the purchaser to the seller:

"June 22, 1966.

"Mr. Braxton Blalock, Jr.

225 Forsyth Street, S. W.

Atlanta, Georgia.

"Re: Sales contract dated December 22, 1965, by and between The Ravenel Co., Inc., D. Braxton Blalock, Jr., and Dean McKoy Realty Co., broker.

"Dear Braxton:

"Confirming our conversation here in my office June 17th and our subsequent telephone conversation June 21, 1966, we would like to confirm our understanding of $4,500 per acre in lieu of $3,000 per acre and for this increase in price there would be no cash down payment and that you would agree to subordinate to the necessary financing in the form of acquisition and development loans only on that portion of the land as it would be released for development. All plans for improvement and development would be made subject to your approval. There would be no additional earnest monies required beyond the $5,000 which has already been posted to Dean McKoy Realty Co., and this would apply to the purchase price at closing.

"Time is not of the essence in this contract so a reasonable time is always allowed to set the closing date; we should work toward this within the next several days within the framework of the contract.

"I shall look forward to hearing from you with regard to your decision regarding the $4,500 offer as outlined above whether it be on the full tract or on the 38-odd acres north of the creek.

"Yours very truly,

"The Ravenel Co., Inc.

"James M. Ravenel, President.

"JMR:ajs

"cc: Dean McKoy Realty Co."

The trial court construed the contract of sale as giving the

purchaser the right to void the contract if he considered the development of the property as contemplated unfeasible under the facts of the case and also found that the purchaser had exercised the right within the required 180 days. The court directed a verdict in favor of the seller and against the broker and the broker's bondsman for the recovery of one-half of the earnest money and in favor of The Ravenel Company, Inc., on the issue of full commission. The broker appealed, enumerating as error the construction placed on the contract, the direction of the verdicts and other matters occurring on the trial of the case.

■ The evidence was not sufficient to establish actionable fraud on the part of the seller and purchaser in their discussions as to a change in the terms of the contract so that it could be carried out, and was therefore not sufficient to sustain the broker's claim for damages against the seller.

■ If the broker could have been found to have been entitled to collect full commissions on the sale from the purchaser the evidence was not sufficient to authorize a finding for the broker as to any definite amount of commissions for the reason that the commission was based on a percentage of an amount determined by the number of acres multiplied by $3,000, the amount agreed on per acre, to be determined by a survey; since there was no evidence of a survey showing the number of acres in the tract sold there was no way in which the amount of commissions due could be determined. *Johnson v. Hammock*, 119 Ga. App. 331 (167 SE2d 235). The court did not err in directing a verdict in favor of the purchaser.

■ The trial judge correctly construed the provision relative to the circumstance which authorized the purchaser to void the sale contract within the 180 days allowed therefor. The provision quoted in the facts means that the purchaser could void the contract if the purchaser determined (in good faith) that it was not feasible to develop said property into a residential subdivision as contemplated by the purchaser. We do not agree with appellant that a development costing much more than the purchaser estimated does not affect the feasibility of the project. The purchaser in this case could not borrow the down payment on the land to be used and could not even acquire it. We

think that under these circumstances the purchaser could reasonably conclude that the project would cost a great deal more to develop than it had anticipated and that since it couldn't even acquire the property the project was not feasible. We do not agree that the word "feasible" applies only to developing the property into a residential subdivision without reference to the kind and cost contemplated by the purchaser. Certainly, the land could be developed into a residential subdivision but such a project was not feasible to a party who couldn't even acquire it and develop it at greater expense than estimated. The proposed lender in this case, who declined the loan to the purchaser, knew what the purchaser intended to do with the property, and that the owner-seller agreed to accept the amount of the loan as a down payment and subordinate his claim to the lender's claim for the down payment. So we think that the purchaser had the right under the contract to void the contract if he did so within the specified 180 days.

■ Under the facts of this case, including the conduct of the parties, the buyer gave the seller sufficient notice that it intended to void the contract. One witness stated that the notice was *to the effect that the purchaser could not go through with the purchase.* That kind of notice necessarily means that it was a notice designed to form the basis of a right to exercise the right to void the contract. The purchaser could not go through with the contract, and so notified the seller within 180 days. We think that this was sufficient notice that the buyer intended to void the contract and that it was not necessary for it to go further and state that it intended to void the contract. Such a statement would have been superfluous under the circumstances. The letter from the purchaser to the seller, dated June 22, 1966, has no relevance on the question whether the purchaser intended to void the original contract. The letter is merely a new offer which, unaccepted, would be binding on no one. The trial court did not err in holding that the evidence demanded a finding that the option to void the contract had been exercised and in directing a verdict for the seller.

■ For the reasons given, the court did not err in denying the appellant's motion for a directed verdict.

*Judgments affirmed. Felton, C. J., Jordan, P. J., Hall, Deen and Whitman, JJ., concur. Bell, P. J., Eberhardt, Pannell and Quillian, JJ., dissent.*

PANNELL, Judge, dissenting. I dissent from the rulings in Divisions 3 and 4 of the opinion. The trial judge construed the special stipulations of the contract as giving the purchaser the right to void the contract if he were unable to procure financing of the down payment on the purchase price, and also found that the purchaser had exercised this right and accordingly directed a verdict in favor of the seller and against the broker and the broker's bondsman for recovery of one-half of the earnest money.

The contract for the purchase and sale of realty in the present case provided for a down payment in cash with the remainder financed by the seller and also provided for the subordination of the seller's security instrument to subsequent development loans and for the releasing of portions under certain conditions and also provided in Paragraph 9 of special stipulations: "If purchaser determines that it is not feasible to develop said property into a residential subdivision as contemplated, purchaser, at his option, may void this contract." While such provision may be sufficiently broad to include financial feasibility in developing a residential subdivision on the property to be purchased, it does not on its face refer to the feasibility of carrying out the contract of purchase and sale itself. See in this connection *Code* § 20-704; *Hader v. Howard,* 215 Ga. 252 (109 SE2d 589); *Black v. Maddox,* 104 Ga. 157 (30 SE 723); Burns v. Reis, 196 Mo. App. 694 (191 SW 1096); Santa Clara Properties Co. v. R. L. C., 217 Cal. App. 2d 840 (32 Cal. Rptr. 333); International Harvester Co. v. Boatman, 122 Ill. App. 474; 17A CJS 481, 484 Contracts, § 399; Hinchman v. City Water Co., 179 Tenn. 545 (167 SW2d 986); Mastorgi v. Valley View Farms, 138 Conn. 313 (83 A2d 919).

The majority in stating that "[t]he trial court construed the contract of sale as giving the purchaser the right to void the contract if he considered the development of the property as contemplated unfeasible under the facts of the case and also found that the purchaser had exercised the right within the required 180 days," has merely paraphrased the language of the

contract special stipulations, ignores the basic question to be decided, and is not a correct statement of what the trial judge ruled. He ruled that the language referred to authorized the purchaser to void the contract if it was not economically feasible *to make the down payment* on the purchase price. Error is enumerated on this ruling. The majority opinion does not decide this question but wanders far afield by ruling that economic feasibility is included within this term of the contract. While that is a question to be decided, this is not the determinative question, as the determinative question assumes the contract refers to economic feasibility. The real question is: does economic feasibility under the contract refer to economic feasibility to make the down payment on the purchase price? As heretofore stated, I do not think so. That the majority have failed to comprehend the issues in the case and the difference between the construction of the contract and the evidence in the case proving whether or not the terms of the contract were met, is shown by their statement that "there was no evidence showing that the expression 'feasible to develop' in such a case had the narrow meaning of applying to the carrying out of the contract of purchase." From this statement, you would almost assume that the majority was agreeing with the conclusions that I have reached as to the construction of the contract. However, the majority follows the above-quoted statement by ruling that proof of inability to make the purchase price is proof of economic inability to develop this project even after purchase. With this later statement I might agree, but I cannot agree that such evidence demanded this finding as must be done to reach the majority conclusion. The letter of June 22, 1966, refers to the contract of December 22, 1965, and shows without question that the purchaser was willing to complete the purchase if the seller would be willing to go up on the purchase price and require no down payment and no additional earnest moneys. If the purchaser was financially unable at this point (one day after the 180 days expired) to develop the subdivision after the purchase, why would he be making such an offer? This letter is at least evidence of the fact that his alleged attempted voidance of the contract was not economical inability to develop after

purchase, but was economic inability to make the purchase price down payment.

Although there is evidence which may authorize a finding that the parties themselves construed the language so as to authorize the purchaser to void the contract because of financial inability to make the down payment, the evidence does not demand such a finding, and this issue should have been submitted to a jury. See in this connection *Code* § 20-703; *Foley, Bro. & Co. v. Abbott & Bro.*, 66 Ga. 115. No mention of this is made in the majority opinion.

There is also some evidence which would *authorize* a finding that the purchaser may have been authorized to cancel the contract because of its inability to secure funds to develop the property into a residential subdivision after completing the purchase; however, *this evidence does not demand such a finding,* particularly so when the purchaser wrote the letter of June 22, 1966, to the seller showing its willingness to consummate the contract if the seller would agree to an increase in the price of the land and eliminate the necessity of making a down payment. The majority opinion ruled that the evidence demanded such a finding. With this I cannot agree.

Under either construction of the contract, the evidence did not demand a finding that the option had been exercised. Notice to the other contracting parties by the purchaser that the purchaser was financially unable to close the contract because of financial inability to make the down payment is mere notice of the fact or condition which would authorize the purchaser to exercise its option and is not, as a matter of law, notice of the exercise of it. The transcript is replete with evidence of the fact, but in only one instance was there testimony that the purchaser had notified the other parties of the exercise of the option. This testimony, however, was subject to be construed by the jury, in the light of testimony immediately prior and subsequent thereto, that the witness was referring to notification of the fact rather than the actual exercise of the option, and particularly so when the purchaser, after the time of the actual notice testified about, attempted to make arrangements for the assignment of the contract of purchase to another party and wrote the letter of June

22, 1966, after the time for terminating the contract had expired, attempting to save the contract by a proposal altering its terms as to the purchase price, which actions were inconsistent with the purchaser's claim that it, prior thereto, had exercised its option to terminate the contract. The trial court, therefore, erred in holding that the evidence demanded a finding that the option had been exercised, even under the construction placed upon the contract by the court, and possibly by the parties.

I cannot concur, therefore, in the statement in the majority opinion to the effect that the letter of June 22, 1966, had no relevancy to the question of whether the purchaser had exercised the option, and had no relevancy to the question of whether the exercise of the option to terminate the contract was done solely because of inability to finance the down payment on the purchase price. I concur in the ruling that no fraud is shown on the part of the seller and the purchaser and that the trial judge was correct in directing a verdict in favor of the purchaser in the third-party action of the broker against the purchaser for full commission. Other enumerations of error not dealt with are either without merit or have been withdrawn by the appellant.

I am authorized to state that Presiding Judge Bell and Judges Eberhardt and Quillian concur in this dissent.